**STATE of Tennessee, Appellee,**

v.

**Sandra Kay BYRD, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 30, 1993.

Permission to Appeal Applied for to the Supreme Court.

Jerry H. Summers and Jeffrey W. Rufolo, Summers, McCrea & Wyatt, P.C., Chattanooga, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., and H.C. Bright and Stan Lanzo, Asst. Attys. Gen., Chattanooga, for appellee.

## OPINION

WHITE, Judge.

This is an appeal from a sentence imposed by the Hamilton County Criminal Court. Sandra Kay Byrd was indicted by the Hamilton County Grand Jury for the offense of conspiracy to commit theft. She entered a plea of no contest to the indicted offense and was sentenced, pursuant to a plea agreement, to four years. Byrd requested a suspended sentence, or in the alternative, placement in the community corrections program. The court denied both requests and initially ordered Byrd to serve her sentence in the Tennessee Department of Corrections. At a subsequent hearing, the court suggested that after a term of incarceration, a community correction sentence might be appropriate. From those rulings, Byrd appeals. For reasons stated below, we affirm the denial of probation, reverse the refusal to impose a community corrections sentence, and remand for resentencing.

At the time of her arrest Sandra Kay Byrd had worked for six and a half years for Jerry Bogo Jewelers, a jewelry store that manufactured jewelry and sold it to retailers. Bogo, the store owner, allowed store employees to buy merchandise for their own personal use or that of their families at a "deeply discounted price," but did not allow employees to buy merchandise for resale.

During the course of her employment Byrd paid for approximately Fifteen Hundred Dollars ($1,500.00) worth of jewelry. Detective Schroyer, who investigated Byrd's involvement in selling Bogo's jewelry, found that she had sold approximately Twenty Thousand Dollars ($20,000.00) worth of merchandise. He recovered a large amount of the jewelry sold by the defendant to nonfamily purchasers. Schroyer also testified that Byrd initially admitted to him that she took between Fifty and Sixty Thousand Dollars ($50,000.00–$60,000.00) worth of jewelry. At sentencing, Byrd denied this statement.

At the time of sentencing, Byrd was a twenty-seven year old divorced student, studying physical therapy at Chattanooga State with no criminal record. Since her termination at Bogo Jewelers, Byrd had become employed at Dixie Savings as an assistant supervisor in health and beauty aids. She lived with her boyfriend, drove a 1986 or 1987 Mustang, and denied an extravagant lifestyle. Byrd's parents paid her attorney fees.

At sentencing, Byrd claimed that she sold only Two Thousand to Twenty–Five Hundred Dollars ($2,000.00–$2,500.00) worth of jewelry. Nonetheless, she agreed to waive her interest in a profit sharing and pension plan at Bogo Jewelry to make restitution. She

also agreed to provide the district attorney general's office with information regarding other employees who were selling Bogo Jewelry.

Before imposing sentence, the judge reviewed the sentencing principles and purposes and found as follows:

> [I]f you read that sentencing act, and for someone with a sentence less than eight years, the legislature is urging the courts to suspend those sentences because of the overcrowding.

But in this situation Ms. Byrd, if she had gone to trial and if the proof had convinced the jury that she was guilty of taking property in excess of $60,000, then at a sentencing hearing I would have been setting her punishment somewhere between 8 and 12 years. She pled nolo contendere with the understanding that the Court would find that she was guilty, based on my knowledge of the case. She pled guilty to a Class C felony, meaning that the theft involved was $10,000 to $60,000. The agreed punishment was 4 years. So her sentence is 4 years in the Department of Corrections.

> The Court does not believe Ms. Byrd. I think that she did tell less than the truth under oath. I think that she did profit from this personally, and that she has lied under oath. So the Court sets her punishment at 4 years active time in the Department of Corrections.

In a subsequent hearing, appellant's attorney urged the court to consider placement in a community corrections program. After testimony from the appellant, the court found:

> Because this Court believes—and under the form of Community Corrections Program we have, they do not receive suspended sentences. They are taken into custody and then if they're approved for Community Corrections, then they are taken out of the workhouse or the jail, and build their sentences while they're under house arrest, under electronic monitoring. It's a very rare situation where anybody is placed on Community Corrections without being taken into custody and left out there

for some period of time. And she doesn't really fit the category for any exception.

. . . . .

> As I say, I think she needs to go out there for at least a minimum of 30 days, then bring her back in and see what her attitude is. If her attitude is right, then let her go to Community Corrections, along with making restitution. If her attitude isn't right, then I still wouldn't put her in Community Corrections. And I may be wrong. The Court of Appeals may say I shouldn't do it that way.

Thus, the issue on appeal is whether the court erred in denying Byrd a suspended sentence and probation or a sentence under the Tennessee Community Corrections Act.

■ Tennessee Code Annotated Section 40–35–401 provides that:

> [t]he defendant in a criminal case may appeal from the length, range or the manner of service of the sentence imposed by the sentencing court.... When reviewing sentencing issues raised pursuant to subsection (a), including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct.

Tenn.Code Ann. § 40–35–401(a) & (d) (1990 Repl.). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability toward rehabilitation. Tenn. Code Ann. § 40–35–210(b) (1990 Repl.); *State v. Ashby,* 823 S.W.2d 166, 168 (Tenn. 1991).

■ Because appellant was sentenced as a Class C felon to less than eight years, she is presumably entitled to probation. Tenn. Code Ann. §§ 40–35–102(6) & –303(a) (1990 Repl. & 1992 Supp.). The trial court must presume that a defendant sentenced to eight years or less and not an offender for whom

incarceration is a priority is subject to alternative sentencing, *State v. Ashby*, 823 S.W.2d 166 (Tenn.1991), and that a sentence other than incarceration would result in successful rehabilitation unless sufficient evidence rebuts the presumption. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn.1991).

A review of this record reveals three factors which the court believed rebutted the presumption. First, the court emphasized the amount of the theft.[1] Second, the court found that Byrd had been dishonest, and presumably considered this factor as reducing her amenability toward treatment. Third, the victim and the state argued that Byrd needed to be denied probation as a deterrence to others in the business. The issue for us is whether these factors overcome the presumption that Byrd is entitled to probation.

■■■ We address first the nature of the offense. The testimony at the sentencing hearing establishes that, while Byrd was charged with one conspiracy count, the offense involved a series of incidents and a sustained criminal intent over a period of time. The trial judge's comments infer that he was persuaded that the enormity of the offense made probation inappropriate. While the nature of the offense is an important consideration, it is "but one of a number of considerations by which the Court must be guided in determining whether to grant or withhold ... probation." *Stiller v. State*, 516 S.W.2d 617, 621 (Tenn.1974). Before the nature alone warrants a probation denial, the act must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree", *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981), and the nature must outweigh all other factors. *Id.* While the offense involved was substantial, Byrd had no prior criminal record, was employed since her arrest, and had no notable social, physical, or mental conditions which would bear upon her probation

suitability. Thus, we conclude that the nature of the offense alone does not support the judge's decision.

■■■ In addition to the nature of the offense, the judge relied upon Byrd's untruthfulness as a reason for denying probation. The record clearly demonstrates that Byrd was untruthful in her testimony. A defendant's untruthfulness is a factor which may be considered in determining the appropriateness of probation. *State v. Neeley*, 678 S.W.2d 48, 49 (Tenn.1984); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn.1983). Lack of truthfulness is probative on the issue of amenability to rehabilitation, *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978), the impetus behind probation.

■■■ The final consideration, deterrence, is a valid consideration in this case. Here the state did not rely on some general proposition that similar crimes needed to be deterred in the area, *see State v. Ashby*, 823 S.W.2d 166, 169–70 (Tenn.1991), but offered proof of the theft problem within this business and the need to deter others from acting as Byrd had. Under these circumstances, where proof of the need to deter exists, deterrence is a valid consideration in evaluating the appropriateness of probation. *State v. Michael*, 629 S.W.2d 13, 15 (Tenn. 1982).

We believe that Byrd's lack of candor, combined with the nature of this offense, and the established need for deterrence (even when viewed in light of her positive social, physical and mental condition, and the absence of a prior criminal record) support the trial judge's conclusions. We acknowledge the closeness of this issue, in light of the legislative mandate, but we are aware that the trial judge had a much greater vantage point than we do to assess Byrd, her attitude, and her potential for rehabilitation. We, therefore, affirm the denial of probation.

---

1. The judge stated "if she had gone to trial and if the proof had convinced the jury that she was guilty of taking property in excess of $60,000, then at a sentencing hearing I would have been setting her punishment somewhere between 8 and 12 years." While it is not altogether clear, it appears that the judge was considering that the property involved must have exceeded $60,000 in value (class B felony) in order for Byrd to have been graded on the conspiracy count as a class C felon. Tenn.Code Ann. § 39–12–107(c) (1991 Repl.). This reasoning is inapposite since Byrd was convicted of conspiracy.

As her second issue, Byrd challenges the trial court's refusal to sentence her to community corrections. Evidently, after the probation denial, Byrd requested an alternative sentence under the Community Corrections Act. The judge denied the request initially because of his policy to not "sign an order for Community Corrections until [an applicant] is in custody." His stated intention was to confine Byrd for thirty days, then determine whether she had made restitution [2] and if her "attitude [was] right." In that event, a community corrections sentence would be given.

We disagree with the judge's policy of requiring confinement and restitution as mandatory prerequisites to community corrections. Community corrections is a program created by the General Assembly to, among other things, "[r]educe the number of nonviolent felony offenders committed ... to correctional institutions and jails by punishing these offenders in noncustodial options." Tenn.Code Ann. § 40–36–104(4) (1990 Repl.). Sentencing pursuant to the Community Corrections Act is an alternative to confinement. An eligible offender can receive a community corrections sentence "under such additional terms and conditions as the court may prescribe, in lieu of incarceration in a state penal institution or local jail or workhouse." Tenn. Code Ann. § 40–36–106(e)(1) (1990 Repl.). A court is specifically authorized to sentence an offender to community corrections "as a condition of probation in conjunction with a suspended sentence, split confinement or periodic confinement." *Id.* at (f). Thus, a court in a particular case is justified in sentencing an eligible offender to community corrections after a period of confinement. Such a sentence must, however, be based upon the facts and circumstances of the individual case. *See State v. Taylor,* 744 S.W.2d 919 (Tenn. Crim.App.1987).

Our concern, however, is with the trial judge's policy as expressed in his statements:

I will not sign an order for Community Corrections until she is in custody.... Because this Court believes—and under the form of Community Corrections Program we have, they do not receive suspended sentences. They are taken into custody.... It's a very rare situation where anybody is placed on Community Corrections without being taken into custody and left out there for some period of time. And she doesn't really fit the category for any exception.

It is apparent that the trial judge believed that all offenders, except "rare exceptions" who were to receive a community corrections sentence, must first serve some period of confinement. This is not the law.

If a trial court finds, in an individual case, after due consideration of the sentencing considerations, purposes, and alternatives, Tenn. Code Ann. §§ 40–35–102—104 (1990 Repl. & 1992 Supp.), that a sentence of confinement and community corrections is appropriate for that offender, then such a sentence is authorized. Tenn.Code Ann. § 40–36–106(f) (1990 Repl.). A trial court cannot, however, impose, as separate and additional conditions in every community corrections case, a period of confinement. To do so allows the trial judge to supplant the legislature's eligibility criteria with the judge's own.

As this court has recognized, the community corrections program is sometimes misunderstood as a wrist-slapping punishment when, in effect, it often punishes participating offenders more seriously than offenders who are sentenced to confinement. *See State v. Westney C. Cummings,* No. 01–C01–9108–CC–00246, at 8, 1992 WL 62021 (Tenn.Crim. App., Nashville, March 31, 1992). In Byrd's case had she accepted her sentence to confinement, she would have completed her sentence most likely in the time her appeal has been pending. With a community corrections sentence, however, she will remain subject to intense supervision for the duration of her sentence and will subject herself to a greater sentence should she violate any of the conditions placed upon her. Tenn.Code Ann. § 40–36–106(e)(3) (1990 Repl.).

In this case we conclude that Byrd is an eligible and appropriate offender for a community corrections sentence. None of the applicable sentencing guidelines or pur-

---

2. Byrd made restitution in an amount agreeable to the state and the victim before her original sentencing hearing by signing over her interest in her profit sharing and pension plan.

poses suggest that her community corrections sentence should be combined with a period of continuous confinement. She is not an offender whose offense or background place her in the first priority category for incarceration. Tenn.Code Ann. § 40–35–102(5) (1990 Repl.). She is presumptively a favorable candidate for an alternative sentence. *Id.* at (6). A community corrections sentence with appropriate conditions and requirements fulfills the sentencing considerations, Tenn.Code Ann.. § 40–35–103 (1990 Repl.), and does justice in this case.

The trial judge's denial of appellant's request for sentencing pursuant to the Community Corrections Act is reversed and this case is remanded for the immediate imposition of a community corrections sentence without any period of continuous confinement. The trial judge remains at liberty to set the term of community corrections and to impose any other reasonable conditions necessary to meet the goals of the Community Corrections Act and of rehabilitating this particular offender. Tenn.Code Ann. §§ 40–36–106(e)(1) & (2) (1990 Repl.).

## Conclusion

We therefore affirm the trial judge's decision to deny probation but reverse the denial of an alternative sentence under the Community Corrections Act and remand for imposition of a community corrections sentence with appropriate conditions.

SCOTT, P.J., and TIPTON, J., concur.