IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE V. ELIZABETH MULLINS

**Direct Appeal from the Criminal Court for Anderson County**
**No. 98CR0178      James B. Scott, Jr., Judge**

---

**No. E1999-01343-CCA-R3-CD - Decided**
**April 27, 2000**

---

Elizabeth Mullins appeals from the Anderson County Criminal Court's denial of probation. She contends that she did not receive a fair probation hearing and that the trial court did not consider all the applicable factors relevant to probation. We affirm the sentence of confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIPTON, J. delivered the opinion of the court, in which WITT, J., and OGLE, J., joined.

Mart S. Cizek, Clinton, Tennessee, for the appellant, Elizabeth Mullins.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; James N. Ramsey, District Attorney General; and Janice G. Hicks, Assistant District Attorney General for the appellee, State of Tennessee.

### OPINION

The defendant entered a best interest guilty plea to theft of over one thousand dollars, a Class D felony. The trial court imposed a two-year sentence to be served in the Department of Correction. The defendant contends that her probation hearing was unfair because the trial court decided to deny her request for probation before the evidence was presented. She also contends that after continuing the probation hearing to allow her to gain employment, the trial court did not consider her proof of employment at the subsequent hearing. The state contends that the trial court properly denied probation after considering the defendant's background, social history, and untruthfulness along with the nature and circumstances of the theft.

At the guilty plea hearing, the state gave the following account of the crime: The victim laid her purse down in a hospital waiting area. Witnesses noticed a woman and a short male behaving suspiciously. The woman left with something under her coat, and the victim noticed that her purse, which contained money and jewelry, was gone. Witnesses identified the defendant and a male called Shorty from a photograph array. The police found Shorty in possession of the victim's checks. Shorty said that the defendant filled out the checks and told him to cash them. The defendant told

the police that Shorty sold the victim's jewelry to purchase crack cocaine. The trial court told the defendant that she would have a probation hearing but that her record would probably prevent her from getting probation. The defendant agreed that she still wanted the court to accept her plea despite the court's express warning that the consequences of her plea would mean that she might serve two years in the penitentiary.

At the probation hearing on January 8, 1999, the state entered the defendant's presentence report into evidence. The report reveals that the then thirty-eight-year-old defendant graduated from high school. The report states that she helped her aunt, who has multiple sclerosis, in exchange for room and board and that she occasionally cleaned houses. The defendant was divorced twice and has a child from her second marriage, but she does not have custody. She reported being in good health with the exception of recent surgery on her ankle. She admitted using alcohol and crack cocaine but claimed to have been drug-free and sober for the last nine months. Her criminal record consists of misdemeanor convictions for a traffic offense in March 1990, driving under the influence of an intoxicant in March 1996, theft and attempted forgery in April 1996, and thefts in 1997 and 1998. The report reveals that the defendant had violated probation twice and was on probation at the time she committed the present offense. The victim impact statement revealed that the victim opposed probation.

At the January 1999 hearing, the court questioned a probation officer, who stated that the defendant was currently reporting and had passed her last drug screen. The court also questioned the defendant's aunt, who said that she had multiple sclerosis and is sometimes paralyzed. The aunt confirmed that the defendant helped care for her and her seven-year-old daughter. She agreed that she could take the defendant to work. The court noted that the defendant's ankle injury had prevented her from getting a job and continued the hearing to give the defendant a chance to find employment.

At the second probation hearing on February 15, 1999, defense counsel presented a letter from the manager of Ryan's Steakhouse, stating that the defendant worked there fifteen to twenty hours per week and was eligible for full-time employment once her ankle healed. The trial court questioned the victim, who said that she wanted the defendant to go to jail. The victim said that on the evening of the offense, her husband was admitted to the Coronary Care Unit. She said that she had removed her jewelry and put it in her purse in preparation for spending the night at the hospital. She said that her purse also contained her checkbook, credit cards, money, car keys and house keys. She said she left her purse in the waiting room for five minutes while she went to get some food brought by relatives. She stated that she spent the rest of the night cancelling her credit cards while her husband lay dying. She said that it took months to get her credit straightened out and that the defendant took advantage of her when she was very vulnerable. The trial court denied probation based upon the defendant's prior record, stating:

> But just looking at her past, looking at this [presentence report]–I don't think there's any doubt that I would do a disservice to our system, to myself, based upon what I know is in this . . . report. . . . . Just looking at this, I could not a bit more give you probation based upon your record without setting a precedent that to me would be completely out of reason and logic.

At the hearing on the defendant's motion to reconsider the denial of probation, the defendant testified that she had abused drugs and alcohol but had been sober and drug-free for the last thirteen months. She said that she was working at Ryan's Steakhouse, attending Alcoholics Anonymous (A.A.) meetings, paying her probation fees, and had passed all her drug screens. She denied taking the victim's purse but admitted that she was with the person who took it. She said she went into the hospital with Michael Bratcher, who had died after the incident. She said that she did not know why Mr. Bratcher was going to the hospital but that they did not need treatment. She said that she followed him into the hospital because he was like a son to her. She said that Mr. Bratcher carried the victim's purse out under his shirt, although she asked him not to take it. She said the purse that she had in the surveillance tape was her own purse. She said that Shorty Wheeler was waiting for them in the car and that she touched the purse only after they were in the car. She said that she passed out and that Mr. Bratcher later told her that Mr. Wheeler had traded the jewelry for crack cocaine. She said that she barely remembered what happened that night because she was under the influence of drugs and alcohol.

The defendant's aunt testified that she had known the defendant all of her life. She said that for the last thirteen months, the defendant was drug-free and sober, attended A.A. and Narcotics Anonymous meetings, met with her probation officer, and worked. She said that the defendant had expressed remorse and had said on many occasions that she wished she had not gone into the hospital with Mr. Bratcher. She restated that she has multiple sclerosis and sometimes experiences paralysis. She said that she trusted the defendant with her seven-year-old daughter and her money. The trial court disbelieved the defendant's testimony regarding her reason for entering the hospital on the night of the offense. It considered the defendant's social history and the circumstances of the crime. The court complimented the defendant for improving her life, but it denied the motion to reconsider based upon her previous record and violations of probation.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the

sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

The defendant contends that the trial court is not entitled to the presumption of correctness due to the disjointed nature of the proceedings and its failure to place its factual findings on the record. To the contrary, at the close of the second probation hearing, the trial court denied probation based upon the defendant's prior record, which included two probation violations. At the hearing on the motion to reconsider, the court considered the defendant's social history and the circumstances of the crime, i.e., the fact that the crime took place in a hospital waiting room. The court disbelieved the defendant's testimony regarding her reason for entering the hospital. The court denied the motion based upon the defendant's previous probation violations. Thus, the court did place findings upon the record. Finally, the disjointed nature of the proceedings benefitted the defendant because she was given an opportunity to obtain employment between the first and second hearings.

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on her own behalf and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The defendant received the agreed upon sentence of two years. She challenges the manner of service of her sentence. As a Range I, standard offender convicted of a Class D felony, the defendant correctly asserts that she is presumed to be a favorable candidate for alternative sentencing options. See Tenn. Code Ann. § 40-35-102(6). The presumption in favor of alternative sentencing may be rebutted if (1) "confinement is necessary to protect society by restraining the defendant who has a long history of criminal conduct," (2) "confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or (3) "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169. Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Tenn. Code Ann. § 40-35-103(5).

The defendant contends that at the reconsideration hearing, the court indicated that it had decided to deny the motion before the presentation of any evidence. At the hearing, defense counsel stated that he and the defendant left the first hearing believing that probation was contingent upon proof of employment. He said that at the second hearing, the trial court denied probation after the victim spoke and before the defendant could present any evidence. The trial court stated its willingness to hear the defendant's proof. Just before the defendant testified, the court said, "I would be happy to have her get up here and testify. I am not trying to prevent you from it, Ms. Mullins, but I am not going to say that this is going to change my mind one bit." We do not believe that this

statement indicates that the court would not consider the evidence presented. Instead, the court merely refused to guarantee a particular result.

The defendant summarily contends that the trial court failed to consider all the factors which bear upon whether she should have been granted probation. With the exception of the employment letter, the defendant fails to specify what factors the trial court should have considered. The defendant cites to State v. Bonestel, which held that with respect to probation, the trial court must weigh "the accused's criminal record, social history, present physical and mental condition, the circumstances of the offense, the deterrent effect upon the criminal activity of the accused as well as others, and the accused's potential for rehabilitation[.]" 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993) (citing Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974)). The defendant contends that the failure to consider all the factors requires a reversal and remand for a new probation hearing. See Bonestel, 871 S.W.2d at 169.

The state contends that the trial court considered the defendant's criminal record, her social history, the circumstances of the theft, and her potential for rehabilitation. The record supports the state's contention. Furthermore, we note that the trial court considered the defendant's physical condition, her ankle injury, in continuing the first probation hearing. Although the court made no specific findings regarding deterrence, it noted at the conclusion of the second probation hearing that in light of the defendant's record, it could not grant probation "without setting a precedent that to me would be completely out of reason and logic." Finally, the trial court disbelieved the defendant's testimony concerning her reason for entering the hospital on the evening of the offense. The defendant's untruthfulness reflects poorly upon her potential for rehabilitation. See United States v. Grayson, 438 U.S. 41, 52, 98 S. Ct. 2610, 2616 (1978); State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Byrd, 861 S.W.2d 377, 380 (Tenn. Crim. App. 1993).

The defendant claims that the case should be remanded for a new probation hearing because the trial court did not consider her proof of employment. At the second probation hearing, the defendant presented a letter from the manager of Ryan's Steakhouse confirming her employment, and defense counsel reminded the court of the letter at the reconsideration hearing. Furthermore, both the defendant and the defendant's aunt testified at the reconsideration hearing that the defendant was working. At the conclusion of the testimony, the court stated that it had considered the defendant's social history, and it congratulated the defendant for improving her life. Thus, we believe that the court considered the defendant's employment but denied probation based upon the prior violations of probation. The trial court properly sentenced the defendant to confinement based upon her previous inability to conform to the requirements of probation. See Tenn. Code Ann. 40-35-103(1)(C).

Based upon the foregoing and the record as a whole, we affirm the trial court's sentence of incarceration.