IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. CURTIS E. WELLS

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-1001-321-A     Donald P. Harris, Judge**

---

**No. M2002-02290-CCA-R3-CD - Filed September 18, 2003**

---

The appellant, Curtis E. Wells, pled guilty in the Williamson County Circuit Court to robbery, a Class C felony. The plea agreement provided that the appellant would receive a sentence of six years, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court ordered the appellant to serve one year at one hundred percent (100%) in the Williamson County Jail, with the remainder of the sentence to be suspended and served on intensive probation. On appeal, the appellant asserts that the trial court erred by not granting total probation. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Virginia Lee Story and Dana M. Ausbrooks, Franklin, Tennessee, for the appellant, Curtis E. Wells.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Ronald L. Davis, District Attorney General; and Matthew T. Colvard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

The record before this court does not include a transcript of the guilty plea hearing. Accordingly, the following facts are gleaned from the presentence report and the transcript of the sentencing hearing.

At the sentencing hearing, the appellant explained the events leading up to the robbery. Two months prior to the robbery, the appellant's cousin, Jonathan Wells, asked the appellant if he would like "to rob his job." The appellant, who had worked at a Sonic drive-in restaurant for three years,

declined. Shortly thereafter, the appellant "got into [his] first little piece of trouble." According to the appellant, he and co-worker, James Proctor, were involved in vandalizing a stranger's vehicle. Although he was not arrested, the appellant was questioned by police about the offense. Adrian Parker, another co-worker at Sonic, informed the appellant that Proctor had "snitched" on him. The appellant decided "to get back" at Proctor.

On the night of the instant offense, after leaving work, the appellant went to his cousin Jonathan's residence and told him, "let's go get James." The appellant explained that by "go get" he meant that he and Jonathan were going to rob Proctor. Demetrius Wade, who was at Jonathan's house, asked if he could accompany the pair. The appellant drove Jonathan and Wade to Sonic. The appellant "pulled up . . . in the neighborhood behind Sonic and Jonathan and [Wade] jumped out of the car and just went and robbed James. Then they came back to the car and we took off."

The appellant testified that before getting out of the car, Jonathan and Wade disguised themselves by wrapping t-shirts around their faces and Jonathan pulled out a chrome .25 caliber pistol. When the appellant saw the gun, he decided to remain in the car because "all I really wanted to do was kick [Proctor's] butt." However, the appellant admitted that he later shared in the proceeds of the robbery, taking $1000 of the $1700 which was stolen.

In October 2001, the appellant was charged with one count aggravated robbery. On June 25, 2002, the appellant pled guilty to the lesser charge of robbery. The plea agreement provided that the appellant would receive a six year sentence, with the manner of service to be determined by the trial court. At the sentencing hearing for the appellant and co-defendant Wade, the appellant asked the trial court to allow him to serve his six year sentence on intensive probation. The appellant testified that at the time of the instant offense, he was twenty years old. He stated that he was a high school graduate and currently employed. In fact, the appellant introduced into evidence a letter from his employer, which letter stated that the appellant had "demonstrated perfect attendance and good job performance." The appellant further related that he was also enrolled in an internet course to become a "certified microsoft systems engineer."

The appellant testified that he had no prior criminal history as an adult or a juvenile. After acknowledging the danger created by his actions, the appellant expressed remorse about committing the offense, stating, "that was not my style." The appellant insisted that, since committing the instant offense, he had not been involved in any other illegal activity. Although he had used marijuana and cocaine in the past, the appellant maintained that he had no problems with drugs or alcohol. Moreover, the appellant explained that because he worked from 10:45 p.m. to 7:15 a.m., he would not be "on the street at night."

After considering the appellant's testimony and the presentence report, the trial court found,
> I am aware that the defendants are convicted of Class C felonies and according to our statute, they're presumed to be favorable candidates for alternative sentencing. However, by case law in this state, I'm allowed to look at the offense that was actually committed and that's

-2-

an armed robbery for which they would not be eligible for alternative sentencing. However, in Mr. Curtis Well's case, I find that he is in fact a good candidate for alternative sentencing, but I will order a sentence of split confinement. He will serve one year at one hundred percent in the Williamson County Jail, five years on intensive probation, a condition of which shall be that he'll be subject to random drug screens, pay his costs, . . . [and] maintain full-time employment.

On appeal, the appellant contends that the trial court erred by not granting total probation.

## II. Analysis

When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the record demonstrates that the trial court failed to consider the sentencing principles and the relevant facts and circumstances, review of the sentence will be purely de novo. Id.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102 and -103 (1997), -210 (Supp. 2002). See also Ashby, 823 S.W.2d at 168. The burden of showing that a sentence was improper is on the appellant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Tennessee Code Annotated section 40-35-102(5) provides that only "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." A defendant who does not fall within this class of offenders and who is "an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options." Tenn. Code Ann. § 40-35-102(6). Furthermore, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993) (citation omitted); see also Tenn. Code Ann. § 40-35-303(a) (Supp. 2002). However, the presumption of alternative sentencing may be rebutted by "evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). Guidance as to what constitutes "evidence to the contrary"

is found in Tennessee Code Annotated section 40-35-103(1) (1997), which provides for confinement when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Because the appellant was convicted of a Class C felony and sentenced as a Range I standard offender, the appellant was presumed to be a favorable candidate for alternative sentencing. The trial court acknowledged this fact and imposed an alternative sentence, ordering the appellant to serve one year in confinement, followed by five years of intensive probation. The appellant contends that the trial court erred by not granting total probation. Specifically, the appellant asserts that "[i]t appears the trial court relied upon the fact that the court can look at the actual crime of aggravated robbery to determine the sentence." The appellant argues that this is not a sufficient reason to deny probation. We disagree.

Even if an appellant is presumed to be a favorable candidate for alternative sentencing, the appellant bears the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see also Tenn. Code Ann. § 40-35-303(b) (Supp. 2002). To meet this burden, "the appellant must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" Id. (quoting State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

After considering "the offense that was actually committed," the trial court determined that although the appellant was a favorable candidate for alternative sentencing, he was not entitled to total probation. When determining the proper sentence for a guilty plea, a trial court is permitted to look behind the plea bargain and consider the actual offense committed. State v. Jonathan Omar Echevarria, No. M2001-02703-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 781, at *9 (Nashville, Sept. 16, 2002) (citing State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983)). In the instant case, the actual offense committed was aggravated robbery. Seeking revenge on co-worker James Proctor, the appellant went to his cousin Jonathan's residence and told him that he wanted to "go get James." The appellant then drove Jonathan and co-defendant Wade to Sonic, the site of the robbery. The appellant watched as Jonathan and Wade disguised themselves and Jonathan grabbed a gun. Although the appellant claimed that all he wanted to do was "kick [Proctor's] butt," he did nothing to prevent the robbery. Instead, the appellant planned the robbery, waited as his companions robbed Proctor at gunpoint, and later shared in the proceeds. Based upon the nature and circumstances of the offense, we conclude that the appellant has failed to establish his suitability for total probation.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.


_____

NORMA McGEE OGLE, JUDGE