# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 24, 2004

## STATE OF TENNESSEE v. MICHAEL B. LASTER

### Direct Appeal from the Criminal Court for Sullivan County
### No. S46,980 and S47,159    Phyllis H. Miller, Judge

---

### No. E2003-01412-CCA-R3-CD
### June 15, 2004

---

The appellant, Michael B. Laster, entered pleas of no contest in the Sullivan County Criminal Court to theft of property over $1,000, operating a motor vehicle in violation of the Motor Vehicle Habitual Offenders Act, resisting arrest, and felony failure to appear. Pursuant to a plea agreement, the appellant received an effective four year sentence with the manner of service to be determined by the trial court. Following a hearing, the trial court denied the appellant's request for alternative sentencing in the form of community corrections, and the appellant timely appealed. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Richard A. Tate, Blountville, Tennessee, for the appellant, Michael B. Laster.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and J. Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The following facts were gleaned from the presentence report and the State's recitation of the facts at the guilty plea hearing. In August 2002, the appellant was employed at Wallace Mitsubishi in Bristol, Tennessee. Beverly Crumley had taken her black Mitsubishi to the dealership for repairs. Crumley did not give the appellant permission to drive her vehicle. Moreover, the appellant's duties at Wallace Mitsubishi "did not entail driving any of the vehicles because he didn't have a license."

On the afternoon of August 3, 2002, Kingsport Police Officer Eric Alford was on patrol when he stopped to investigate a black Mitsubishi parked in the roadway in front of 1015 Dale Street. Officer Alford observed three men standing by the passenger window. As Officer Alford approached the vehicle on the driver's side, the three men "walked off abruptly." The driver, later identified as the appellant, did not acknowledge Officer Alford's presence. Officer Alford ordered the appellant to show his hands, but the appellant reached toward the floorboard of the vehicle. Concerned that the appellant was reaching for a weapon, Officer Alford "grabbed [the appellant] around the neck and attempted to open the door." Upon opening the door, Officer Alford threw the appellant to the ground and "used a pain compliance technique on his right arm." A second officer arrived at the scene and assisted Officer Alford in placing handcuffs on the appellant's wrists. Officer Alford then placed the appellant in the backseat of his patrol car.

Officer Alford ran a check on the vehicle registration and the appellant's driver's license. He was advised that the vehicle driven by the appellant was registered to Beverly Crumley. He was further advised that the appellant had previously been declared an habitual traffic offender. When Officer Alford informed the appellant that he was under arrest for violating the Motor Vehicle Habitual Offenders Act, the appellant "became aggressive and stated he had a gun in his waistband and he was going to kill me and [the other officer]." The appellant reached for his waistband, and Officer Alford "administered a one second burst of OC spray." However, the appellant continued to reach for his waistband. Officer Alford stepped away from the patrol car and summoned the assistance of additional officers.

Shortly thereafter, Officer Lawson arrived at the scene. The officers opened the rear doors of the patrol car and ordered the appellant to show his hands. When the appellant refused, Officer Lawson "struck [the appellant] with his asp several times on the meaty part of the thigh." Officer Alford then struck the appellant in the face with a closed fist and pulled him to the ground outside the patrol car. Finally, the appellant complied, and the officers "double cuffed" him. On October 31, 2002, the appellant failed to appear for a scheduled court hearing for these offenses.

The appellant was subsequently charged by presentment with theft of property over $10,000, operating a motor vehicle in violation of the Motor Vehicle Habitual Offenders Act, resisting arrest, and felony failure to appear. On April 2, 2003, the appellant pled no contest to theft of property over $1,000, a Class D felony; operating a motor vehicle in violation of the Motor Vehicle Habitual Offenders Act, a Class E felony; resisting arrest, a Class B misdemeanor; and felony failure to appear, a Class E felony. The trial court accepted the appellant's pleas and sentenced the appellant as a Range I standard offender to two years incarceration for the theft of property conviction, two years incarceration for the violation of the Motor Vehicle Habitual Offenders Act, six months confinement for the resisting arrest conviction, and two years incarceration for the felony failure to appear conviction. The sentences for the convictions of theft of property, violation of the Motor Vehicle Habitual Offender's Act, and resisting arrest were to be served concurrently to each other, but consecutively to the sentence for the conviction of felony failure to appear, for an effective sentence of four years incarceration. On May 16, 2003, the trial court held a sentencing hearing to consider the appellant's request for alternative sentencing.

At the sentencing hearing, the twenty-six-year-old appellant testified that he was married, and he and his current wife had a six-month-old son. The appellant also had two children from a prior marriage. Austin, the appellant's son from the prior marriage, lived in Hawaii with the appellant's sister, Tara Sperry, who wrote a letter to the trial court on the appellant's behalf. In her letter, Sperry explained that her father had abandoned the family when her mother was pregnant with the appellant and the lack of a male role model resulted in the appellant making many poor decisions. She further stated that she had custody of the appellant's seven-year-old-son, Austin, and believed that Austin "would be better off psychological[ly]" if he lived closer to his father. Sperry asked the trial court to allow the appellant to serve his sentence at the Hay House.

The appellant "begg[ed]" the trial court to sentence him to community corrections at the Hay House. The appellant acknowledged that as a result of the instant offenses, his probation for a previous conviction had been revoked and a determinate sentence imposed. However, he maintained that, because he had successfully completed the Wayne County Boot Camp, he was capable of successfully completing community corrections. He understood that if he did not comply with the conditions of community corrections, the trial court could revoke his community corrections sentence and enhance his sentence. The appellant testified that he had procured employment "doing metal roofing" with Stefan Smith, who would drive the appellant to and from work each day.

Upon questioning by the trial court, the appellant stated that when he took Crumley's vehicle, he was attempting to impress his employers at Wallace Mitsubishi. The appellant claimed that he was taking the vehicle to "a friend" who owned and operated a detail shop in Kingsport. According to the appellant, his friend was going to teach him how to "fix the dents" in Crumley's vehicle. However, before the appellant arrived at his friend's house, he was stopped by police and arrested. The appellant conceded that when he reported the instant offenses to his probation officer, he told her that his fiancé had been driving the vehicle. The appellant stated that he lied to his probation officer because he "was afraid that she would take [him] to jail that day [for violating the Motor Vehicle Habitual Offenders Act]." In his final plea to the trial court, the appellant stated, "Your Honor, I made a really stupid mistake. . . . I tried to make it to the top at Wallace Mitsubishi. I was determined, I was determined to do anything I could. . . . It was stupid."

William Stefan Smith testified at the sentencing hearing that he was a subcontractor who installed metal roofing. He had known the appellant for four years and was engaged to the appellant's sister. Smith related that he had offered the appellant full-time employment and had agreed to drive the appellant to and from work. On cross-examination, Smith maintained that although he was aware of the appellant's criminal history, he trusted the appellant to work in others' homes and businesses.

At sentencing, the State relied upon the presentence report. The presentence report reflects that the appellant had numerous prior felony and misdemeanor convictions, many of which were committed while the appellant was on probation for prior offenses. In the presentence report, the appellant admitted that he previously had a serious problem with alcohol and marijuana. The appellant reported that he began drinking when he was five years old and by adulthood he drank a

twelve pack of beer a day. However, the appellant claimed that after a nearly fatal automobile accident, he stopped drinking. The appellant also reported that he smoked two or three "joints" a day until April 2001 when he "realized [he] had a bad problem" and quit.

After considering the presentence report, the testimony at the sentencing hearing, the arguments of counsel, and the applicable sentencing factors, the trial court denied the appellant's request for alternative sentencing. The appellant now brings this appeal.

## II. Analysis

On appeal, the appellant challenges the trial court's denial of alternative sentencing. Specifically, the appellant contends that he was a suitable candidate for community corrections. See Tenn. Code Ann. §§ 40-35-104(c)(9), 40-36-106 (2003). When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the record demonstrates that the trial court failed to consider the sentencing principles and the relevant facts and circumstances, review of the sentence will be purely de novo. Id.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003). See also Ashby, 823 S.W.2d at 168. The burden of showing that a sentence was improper is on the appellant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Tennessee Code Annotated section 40-35-102(5) provides that only "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." A defendant who does not fall within this class of offenders and who is "an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options." Tenn. Code Ann. § 40-35-102(6). Furthermore, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993) (citation omitted); see also Tenn. Code Ann. § 40-35-303(a) (2003).

-4-

The Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. 40-36-103 (2003). Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;[1]
> (C) Persons who are convicted of nonviolent felony offenses;
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
> (F) Persons who do not demonstrate a pattern of committing violent offenses . . . .

For offenders not eligible for community corrections under subsection (a), Tennessee Code Annotated section 40-36-106(c) creates a "special needs" category of eligibility. Subsection (c) provides that

> [f]elony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

Because the appellant entered pleas to Class D and E felonies and was sentenced as a Range I standard offender to less than eight years, he was presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. §§ 40-35-102(6), -303(a). The appellant was also eligible for consideration of a community corrections sentence under subsections (a) and (c) of Tennessee Code Annotated section 40-36-106. However, an offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998). Moreover, the presumption of alternative sentencing may be rebutted by "evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v.

---

[1]These crimes against the person include assaultive offenses, criminal homicide, kidnapping and false imprisonment, and sexual offenses.

Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). Guidance as to what constitutes "evidence to the contrary" is found in Tennessee Code Annotated section 40-35-103(1), which provides for confinement when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

At the alternative sentence hearing, the trial court noted that the appellant was entitled to a presumption of alternative sentencing; however, the court determined that the presumption had been successfully rebutted in the appellant's case. Reviewing the presentence report, the trial court observed that the appellant had a "very, very extensive criminal history," as well as poor educational and employment histories. The trial court applied and afforded great weight to enhancement factors (2), (9), and (14), finding that the appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, and the instant felonies were committed while the appellant was on probation for a prior felony offense. Tenn. Code Ann. § 40-35-114(2), (9), and (14). The trial court also applied mitigating factor (1), the appellant's criminal conduct neither caused nor threatened serious bodily injury, but afforded the factor little weight. Tenn. Code Ann. § 40-35-113(1). Thereafter, the trial court determined that "community corrections should be denied because [the appellant had been] granted alternative sentencing . . . many times and not obeyed the rules, committed more crimes." The trial court also found that the appellant had "little or no potential for rehabilitation because [he was] not truthful."

The record supports the trial court's denial of a community corrections sentence. The presentence report reflects that the appellant had numerous prior felony and misdemeanor convictions, including convictions for assault, theft, operating a vehicle in violation of the Motor Vehicle Habitual Offenders Act, driving under the influence, driving while license revoked, and possession of marijuana. Many of these offenses were committed while the appellant was on probation for prior offenses. At the time the appellant committed the instant offenses, he was on probation in Hamblen County for theft of property over $1,000 and violating the Motor Vehicle Habitual Offender's Act, both of which were felony convictions. Moreover, at the alternative sentencing hearing, the appellant conceded that he had lied to his probation officer when he told her

that his fiancé was driving Crumley's vehicle on the day of the instant offenses. The trial court also questioned the appellant's explanation that at the time he was arrested, he was taking Crumley's vehicle to "a friend" who was going to teach him how to repair "the dents." A defendant's lack of candor or untruthfulness reflects poorly on a defendant's potential for rehabilitation. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

Based upon the foregoing, we conclude that the trial court correctly determined that the appellant "has a long history of criminal conduct" and that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A) and (C). Moreover, the commission of offenses while on probation and the appellant's lack of truthfulness reflect poorly on his potential for rehabilitation. Accordingly, we conclude that the trial court properly sentenced the appellant.

### III. Conclusion

Finding no reversible error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE