# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 19, 2001 Session

## STATE OF TENNESSEE v. RICHARD L. THOMPSON

**Appeal from the Criminal Court for Wilson County**
**No. 99-1945     John D. Wooten, Jr., Judge**

---

**No. M2000-01429-CCA-R3-CD - Filed September 7, 2001**

---

Defendant, Richard L. Thompson, was accused by the Wilson County grand jury of incest of his stepdaughter, in three counts, all occurring between May and August 1999. On January 13, 2000, Defendant agreed to plead guilty to one count of incest for a sentence of six (6) years in the Department of Correction. As part of the plea agreement, Defendant requested a sentencing hearing for the trial court to consider an alternative sentence and probation. At the conclusion of the sentencing hearing, the trial court denied Defendant's request for an alternative sentence and probation and confined Defendant in the Department of Correction for six (6) years. On direct appeal, Defendant raises five (5) issues: (1) Whether the trial court improperly considered a 1989 Pennsylvania conviction for an undetermined offense in finding Defendant was not an appropriate candidate for full probation or split confinement; (2) Whether the trial court erred by finding certain statutory enhancement factors applicable to the determination of how the sentence should be served, where length of sentence was determined in the guilty plea; (3) Whether the trial court erred in finding that the sentence of confinement was necessary to avoid depreciating the seriousness of the offense; (4) Whether the trial court erred in failing to consider whether measures less restrictive than confinement had been applied to this offender; and (5) Whether the trial court erred in failing to consider Defendant's special needs into consideration as a factor that made alternative sentencing (community corrections) particularly appropriate in this case. Upon a review of the record, legal arguments, the briefs of the parties, and applicable law, we find no error. Thus, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which DAVID G. HAYES, J., and THOMAS T. WOODALL, J., joined.

William K. Cather, Lebanon, Tennessee, for the appellant, Richard L. Thompson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Robert Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## BACKGROUND

On January 13, 2000, Defendant entered a plea of guilty in cause No. 99-1945, count one, to the offense of incest of this stepdaughter, BB,[1] age 14. Defendant had been accused of this offense in a three count indictment.[2] Unfortunately, a transcript of the guilty plea proceedings was not included in the record. At the sentencing hearing of May 22, 2000, a pre-sentence report was admitted as an exhibit without objection. As to how these offenses originated, we quote from the pre-sentence report:

> Barbara Long of the Tennessee Department of Children's Services was assigned as case manager in this case. The following are paraphrases and quotes from interviews with BB and BB.
>
> 11/2/99    When asked by the interviewer "What was going on at home," BB informed her that her dad, "threatened to leave unless I'd go to bed with him. Mom had gone to work. He came in my room and closed the door and locked it. He told me he loved me. He pulled the sheets down and down [sic] what you called eat me out." When asked how many this happened, BB stated about three or four times. When asked what would happen when he would pull the sheets down, BB stated, "he took off my pants and underwear. He would spread my legs and eat me out. He put me on my knees. I was laying on my stomach. He put his penis in me." When asked when this last happened, BB stated it last happened about two months ago. When asked where he penetrated her, BB said "on my breasts and vagina." When asked what he would say to her about telling any one else, BB stated "he would threaten to leave if I told or anything." When asked what she thought of her dad, BB said, "I don't care for him that much at all. He's just a weird person. He has lots of problems. Sometimes whenever he gets mad, he walks through the house slamming doors and yelling."
>
> 12/13/99 Closing Summary:
>
> This agency received a report that BB was being sexually abused by Richard Thompson. This worker interviewed BB who stated that her step-dad did sexually abuse her. BB stated that her step-dad "threatened to leave unless I'd go to bed with

---

[1]We do not list the names of juvenile victims, but refer to their names by initials.

[2]The pre-sentence report reflects that the November term of the Wilson County grand jury returned accused the Defendant of three counts of rape and three counts of statutory rape. These charges were amended by the December session of the grand jury to three counts of incest.

him." BB stated that Richard Thompson did penetrate her with his penis and his hand.[3]

The following is a narrative from the Wilson County Sheriff's Department:

"Ms. Thompson said on 09-13 her adopted daughter, BB, showed her a letter wrote to her by Ms. Thompson's husband Richard, that is suggestive of sexual activity between BB and Richard. BB told Ms. Thompson she and Richard had had sexual relations 2-3 times. She was unsure exactly how many. Ms. Thompson said BB did admit that Richard did enter her body with himself. Ms. Thompson also said BB said she did these sexual acts to keep Richard from leaving, because she knew Richard made her mother happy being around."

At the sentencing hearing, Jim Holder, a probation officer, identified the pre-sentence report compiled by himself. Although he requested victim impact statements from the victim and mother, he did not receive these statements. Holder testified that he found an old psychological report that the DHS had received on Defendant. The report showed Defendant had been evaluated in the Office of Rehabilitation and Vocational Psychological Services in Pennsylvania in July 1995. The report indicated that Defendant had an indecent exposure conviction in 1988. As a result, Holder stated that he contacted the Allogamy [sic] County Probation Office in Pennsylvania and learned that Defendant had been convicted of indecent assault against another person on December 7, 1989, and given two years of supervised probation. Defendant had some minor arrests for drinking. Mr. Holder determined four enhancement factors were applicable: (3) the offense involved more than one victim; (4) the victim was particularly vulnerable because of age; (7) the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement; and (15) the Defendant abused a position of private trust. Defendant submitted four mitigating factors: (1) that the Defendant's criminal conduct neither caused nor threatened serious bodily injury; (2) the Defendant was suffering from a mental condition that significantly reduced the Defendant's culpability for the offense, and this condition was not the result of the voluntary use of intoxicants; (3) the Defendant, although guilty, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the Defendant's conduct; and (4) other factors consistent with the purposes of the sentencing statutes, to wit: a through j.

Mr. Holder testified that he received a psychosexual report on Defendant which indicated that Defendant would need intensive supervision to make sure he did not offend and that he would be a moderate risk for re-offending. Holder acknowledged that he did not have a certified copy of any conviction concerning Defendant from Pennsylvania.

---

[3]The pre-sentence report indicates that the Department of Children Services interviewed BB's sister, with the same initials, who described an unwanted sexual encounter with the Defendant, and told her mother who responded, "people do make mistakes."

Attached to the pre-sentence report is a Comprehensive Psychosexual Evaluation compiled by David Orvin. This report was requested by the Board of Probation and Parole and not by defense counsel as suggested in the report. The report indicates that Defendant was given psychosexual tests, which were sent to Iowa for analysis by Nichols and Molinder. In comparing Defendant's history with levels of nationally standardized samples of adult male sex offenders, Defendant's results show: (1) he scored more than one standard deviation above the mean on the Molester Comparison (MC) scale suggesting that the level of commonality in thinking and behaving between the client and the reference group of adult males who molest children is highly similar; and (2) he scored within one. Standard deviation of the mean on the Rapist Comparison (RC) scale suggesting that the level of commonality in thinking and behaving between the client and the reference group of adult rapists of both children and adults is moderately similar. The report set forth eight recommendations concerning Defendant, commencing with him receiving sex-offender-specific mental health treatment. This program may be pursued at an out-patient community based facility. Furthermore, the report recommends that Defendant have no contact with children under 18 years of age, unless under the supervision of a responsible adult and his step-children should not stay overnight. Defendant remains at risk for re-offense and is in need of sex-offender-specific treatment. With such treatment his prognosis is fair, without treatment his prognosis would be poor. Defendant is a moderate risk for re-offending and may be appropriate for intensive probation with strict conditions and intensive supervision.

On behalf of Defendant, Dr. Sandra Phillips, a clinical psychologist, testified that she examined Defendant at the request of defense counsel. Dr. Phillips interviewed Defendant over four hours between May 5 and May 19. Dr. Phillips also had telephone interviews with Defendant's wife and two sisters. In addition, Dr. Phillips had Defendant's treatment records from Cumberland Mental Health Services. Dr. Phillips determined that Defendant is a recovering alcoholic and has been for 11 years. Dr. Phillips diagnosed Defendant as suffering from Axis I, a bipolar disorder, with psychotic features, and further, Defendant has two personality disorders. Dr. Phillips was aware that Defendant was on medication, but at the time of the alleged offenses, Defendant had stopped taking his medication. Dr. Phillips opined that Defendant needs to be on medication, more than likely forever, due to mood disorder and the psychosis he suffers; he would have to remain sober and attend a sexual treatment program which could be out-patient. Defendant needs to take full responsibility for creating a safe sexual environment for any children he would be around. Dr. Phillips stated that Cumberland Mental Health Services has a sex offender treatment program. It was Dr. Phillips conclusion that Defendant is not a pedophile.

During cross-examination, Dr. Phillips agreed that if Defendant was placed in the same situation again, as far as young girls in a family situation, it certainly would increase the risk of re-offending. When asked if it's important that Defendant never be alone with children, she responded, "I think that's important."

Mrs. Diane Thompson, wife of Defendant, testified that her priority is to her daughters and she has them in counseling, as well as herself. Mrs. Thompson stated that her husband suffered from mood swings and would lock himself in the bedroom and refuse to come out. She was aware that

her daughter said that Defendant had threatened to leave home if the daughter did not have sex with him. She stated that her husband's mood swings have intensified since his brother committed suicide in May of 1999. Mrs. Thompson testified that Defendant admitted to this offense, and since his arrest, Defendant seems more calm, settled and less flighty. Mrs. Thompson acknowledged that the children could not be in the home with Defendant. If he ever was, close supervision was essential. Here, Mrs. Thompson seems to indicate that after counseling, the children may be permitted to be around Defendant. She stated this was her and Defendant's second marriage to each other, the first marriage lasted from 1974 to 1980. She and her second husband adopted the two girls in 1993. Mrs. Thompson stated that she would provide emotional support for Defendant, as far as she can, but she must look out for the children first. As to any further incarceration, Mrs. Thompson testified that further incarceration would not do any good. "To me what you have if the person serves that time, the rest of six years out, you have the same problems. Only the person is six years older."

During cross-examination, Mrs. Thompson affirmed that she had taken the girls to the county jail when she visited Defendant. Mrs. Thompson stated that the victim's biological father had abused her and that it would be good for the victim to see that "this is what happens when you violate or break the law." Also, Mrs. Thompson stated that the girls became friendly with Defendant's cell-mate which caused the deputy jailer to become upset with her .

On his own behalf, Defendant testified that he did have sexual relations with his 14 year old step-daughter. Since he has been on his medication, his head is much clearer, and he recognizes that the victim is a child and that he is the adult. As to the offense in Pennsylvania, Defendant testified that he was drunk and got naked, and ran around the house screaming and yelling. Defendant entered a 21 day rehabilitation program in a Veterans Administration hospital in Pittsburgh. Defendant acknowledged that he was supposed to be taking medication when the offense with the victim occurred. Defendant stated that if he got treatment and stayed on his medication, he could conform to the rules of society.

Reverend Robin C. Hall, pastor at the Hermitage United Methodist Church, testified that he met Defendant and his family at the church. Reverend Hall stated that he was counseling Defendant and the family prior to his arrest and has continued to do so since the arrest. Prior to his arrest, Defendant was confused, would slur his words and his language was strange. After the arrest, Reverend Hall saw Defendant in jail. Defendant was disturbed, blaming everybody else and was very upset and fidgety. After three to four months, Reverend Hall began to see a change in Defendant, he was taking his medication and made a real improvement. Reverend Hall stated that Defendant's social security benefits for mental illness had been suspended while he was in jail. Reverend Hall testified that if Defendant were given probation, he and the church would control Defendant's funds, provide housing for 90 days and some food assistance. Also, the church would assist Defendant in making his psychological meetings.

In support of the Defendant's application for probation, the Defendant submitted five packets of letters from various church members and church groups.

At the conclusion of the sentencing hearing, the trial court recognized that Defendant was a candidate for probation, but the trial court must look at the facts and circumstances of the offense. In this situation, Defendant abused a private trust in engaging his stepdaughter in a sexual offense. Also, the trial court found Defendant had incredible support from his church members and church groups, but found it somewhat difficult to reconcile the facts of the offense with this support. The trial court found three enhancement factors applicable to the granting of full probation or an alternative sentence arising from the facts and circumstances of the offense. Likewise, the trial court found Defendant was not a first offender. Defendant had been convicted in Pennsylvania of a sexual case in which he was granted two years probation. The trial court concluded that the time period of probation indicated in the offense in Pennsylvania must have been a felony. As to Defendant's rehabilitation, the trial court had serious reservations based upon the Pennsylvania incident and Defendant re-offended in this offense. The trial court found that society's interest in protection, as well as the protection of the child, required a denial of full probation due to the seriousness of the offense. Also, the trial court was concerned about the psychological reports of the State and Dr. Phillips, that there is some evidence that Defendant is close to a group of adult males who might molest children as indicated by the State's evidence. The trial court commented, "based upon the whole record before me, I really believe that, in this case, that I don't really have much choice but to sentence him to six years in the Department of Correction. That's the judgment of this court."

## LEGAL ANALYSIS

In essence, Defendant asserts that the trial court erred in failing to properly consider an alternative sentence, with split confinement, or community corrections, or full probation. Defendant requests this Court to reverse the trial court's judgment to reflect split confinement of one year (already served) and place Defendant on immediate probation. The State counters that the record supports the trial court's decision.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo. State v. Batey,* 35 S.W.3d 585, 588 (Tenn. Crim. App. 2000). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated § 40-35-210, to consider the following factors in sentencing: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) any statement the defendant wishes to make in the defendant's own behalf about sentencing.

The offense of incest in this case is a Class C felony, thus, Defendant is presumed to be a favorable candidate for alternative sentencing in the absence of proof to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a Defendant sentenced to eight years or less and who is not an offender for whom incarceration is a priority is subject to alternative sentencing. *State v. Batey,* 35 S.W.3d at 588; *State v. Byrd,* 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993).

Under the 1989 Sentencing Act, confinement requirements are to be based upon the following considerations: (A) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (B) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or (C) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1); *State v. Boston,* 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); *State v. Zeolia,* 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). In determining the manner of service, a trial court may consider the enhancement and mitigating factors set forth in Tennessee Code Annotated §§ 40-35-113, 40-35-114; *State v. Batey,* 35 S.W.3d at 588; *State v. Boston,* 938 S.W.2d at 438. The trial court should consider Defendant's potential for rehabilitation when determining whether an alternative sentence would be appropriate. *State v. Zeolia,* 928 S.W.2d at 461.

## PRIOR 1989 CONVICTION

Defendant asserts that the trial court gave too much emphasis to the 1989 conviction of Defendant for indecent exposure or indecent assault in Pennsylvania in considering probation or an alternative sentence. The record reflects that Defendant was convicted in Pennsylvania in 1989 for indecent assault on a person as verified by the Tennessee Board of Probation. Defendant was placed on a two year supervisory program. Defendant describes this incident as he being drunk and running naked through a house in the presence of other persons. Whether Defendant was convicted of a felony or misdemeanor, Defendant engaged in criminal behavior of some form of sexual nature to cause his arrest and being placed on probation. Trial courts may consider prior criminal convictions or conduct in determining a manner of service of a sentence, as long as the consideration does not violate the principles of the 1989 Sentencing Reform Act. *State v. Davis,* 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991). We cannot say the trial court erred in considering this evidence in determining an alternative sentence or if Defendant is suitable for full probation. We find no merit to this issue.

## ENHANCEMENT FACTORS

Defendant asserts that the trial court erred in considering certain enhancement factors in determining the manner of service of Defendant's sentence, but the mitigating factors were not appropriate for subject matter for the sentencing hearing. The trial court adopted the pre-sentence report listing of three enhancement factors: (4) the victim was particularly vulnerable; (7) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; and (15) the defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114. As to the

mitigating factors, the trial court commented, "We're really kind of over that part because that has to do with our setting the sentence. The issue here is how that sentence is to be served. I mean, I considered those and I understand those and that's part of the record but the issue here is how it's to be served." Furthermore, as to enhancement factors, the trial court stated:

> Those enhancement factors with the exception of perhaps the one involving more than one victim, that the probation officer suggested do apply, I don't have to look at those in assessing the sentence, but in this context those are part of the facts and circumstances surrounding the offense.

To determine a proper manner of service of a sentence, the trial court shall consider the following criteria: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) *the nature and characteristics of the criminal conduct*; (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) any statement the Defendant wishes to make in the Defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(a)(b); *State v. Batey*, 35 S.W.3d at 588; *State v. Ashby*, 823 S.W.2d at 169; *State v. Michael W. Wasson*, No. 02C01-9708-CR-00323, 1998 WL 264145 (Tenn. Crim. App. 1998); *State v. James Frazier*, No. 01C01-9801-CC-00036, 1999 WL 810148 (Tenn. Crim. App. 1999), *perm. app. denied*, (Tenn. 2000). Clearly enhancement and mitigating factors are appropriate considerations for determining the manner of a service of a sentence.

In the determination of the manner of service in this case, we have serious reservations of the applicability of enhancement factor (4), the victim was particularly vulnerable. In sexual offenses, the State must show the victim was particularly vulnerable because of age or physical or mental disability. *State v. Kissinger,* 922 S.W.2d 482, 487 (Tenn. 1996). This factor may be used if it is established that the victim's natural physical and mental limitations renders the victim particularly vulnerable for his or her age because of an inability to resist, a difficulty in calling for help, or a difficulty in testifying against the perpetrator. *Id. State v. Hayes,* 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995), *perm. app. denied,* (Tenn. 1995). The record is silent as to how vulnerable the 14-year-old stepdaughter may be. We find that the trial court's finding the applicability of this enhancement factor was error.

However, we agree with the trial court's findings that enhancement factors (7) and (15) are applicable. Enhancement factor (7) is applicable in offenses of incest. *See State v. Walton,* 958 S.W.2d 724 (Tenn. 1997); *State v. Jones,* 953 S.W.2d 695, 698 (Tenn. Crim. App. 1996), *perm. app. denied*, (Tenn. 1997) (Factor (7) is neither inherent in nor an essential element to a rape conviction, citing *State v. Kissinger,* 922 S.W.2d 482 (Tenn. 1996).). The record established that the Defendant engaged in three to four various sexual acts with his 14-year-old stepdaughter over a period of time. The Defendant ordered the victim not to say anything or he would leave the family. The victim acquiesced in this warning to enable the family to remain intact. We find the Defendant's repeated involvement with his stepdaughter meets the standard of objective evidence as set forth in *State v. Arnett*, No. E1998-00051-SC-R11-CD (Tenn. 2001) in applying enhancement factor (7). Clearly,

the enhancement factor (15), an abuse of a private trust is applicable. As the victim's stepfather, Defendant occupied a position of trust. Children trust their custodial parents to care for and protect them. Defendant, in this case, abused that trust. Merely because Defendant was convicted of incest does not entitle him to any largess. Enhancement factor (15) was appropriately applied. *State v. Jones,* 953 S.W.2d 695 at 699.

SERIOUSNESS OF OFFENSE

Defendant contends that there is nothing in this record to support the denial of an alternative sentence or probation based upon the seriousness of the offense. Citing *State v. Hartley,* 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). Further, Defendant asserts that his long-standing mental illness, and psychotic state during this affair with his stepdaughter favors an alternative sentence, if not full probation. In denying probation, the trial court commented:

> "Interest of society in being protected from possible future conduct of this defendant. The problem is he re-offended or committed another act, another sexual act. I'm concerned that if I place him on full probation, indeed it's his burden of proof, really to establish that he is entitled to full probation. And that it would be in his best interest and that of the public. I think to do so would depreciate the seriousness of this offense."

As to an alternative sentence, the trial court stated: "I think that if in this case, had he not had that prior offense, I would be inclined to put him on split confinement. But with this child, I don't see how I can protect her or society or indeed give assurance of anything. I just don't see how I would not be depreciating the seriousness of this offense. I just don't see how."

We have initially noted Defendant is entitled to the statutory presumption of an alternative sentence. Tenn. Code Ann. § 40-35-102(5). In order to deny an alternative sentence, which includes consideration of probation, based on the seriousness of the offense, "the circumstances of the offense as committed must be ' especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Zeolia,* 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996); *State v. Bingham,* 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), *perm. app. denied,* (Tenn. 1995); *State v. Hartley,* 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). We believe that multiple acts of incest with one's own daughter or stepdaughter, in the minds of most persons, would meet the criteria of *Hartley.* The record in this cause established Defendant had several incestuous acts with BB over a period of months. Defendant threatened to leave home if the child refused to have sex with him. The child acquiesced so that her mother would not be upset. Clearly, Defendant abused his relationship of trust with his stepdaughter by insisting on sexual relations. We conclude that Defendant's incestuous acts over a period of months, coupled with his abuse of a private trust, is directly relevant to the seriousness of the offense and weighs in favor of confinement.

TRIAL COURT'S FAILURE TO CONSIDER MEASURES LESS RESTRICTIVE THAN CONFINEMENT HAD BEEN "FREQUENTLY OR RECENTLY" APPLIED TO THE OFFENDER.

Defendant asserts that the trial court failed to take into account whether "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant. Tenn. Code Ann. § 40-35-103(1)(C). Further, the trial court placed too much emphasis on Defendant's prior conviction in 1989. Defendant is correct that measures less restrictive than confinement have not been frequently or recently applied to Defendant. Defendant has no arrests or convictions since 1989. We are somewhat puzzled as to how a trial court should address this argument when there has been no immediate arrests or convictions in which this confinement standard is applicable. We agree with the State that the trial court did consider the conviction and placement of Defendant on probation in relationship to the question of rehabilitation and the possibility of re-offending. We find no merit to this issue.

COMMUNITY CORRECTIONS.

Defendant contends that the trial court failed to consider the community corrections program as an alternative sentence in view of Defendant's special needs. At the time of this offense, Defendant was suffering from a severe mental illness and that mental illness played a significant role in the commission of the offense. The State argues that due to the expert's evidence, Defendant has not demonstrated that he should be placed in the community corrections program.

First, we recognize that Defendant would not be eligible for community corrections sentencing under Tennessee Code Annotated § 40-36-106(a)(2)(5)(6). However, § 40-36-106(c) provides that felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter. *State v. Boston,* 938 S.W.2d 435, 437 (Tenn. Crim. App. 1996). To be eligible for community corrections under subsection (c), the Defendant must be eligible for probation. *Id.; State v. Staten,* 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). Defendant is eligible for probation, thus Defendant is eligible for community corrections sentencing. *State v. Boston,* 938 S.W.2d at 439. If a Defendant is suitable for community corrections sentencing, then a determination must be made on the following facts: (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems; (2) these factors were reasonably related to and contributed to the offender's criminal conduct; (3) the identifiable special need (or needs) are treatable; and (4) the treatment of the special need could be served best in the community rather than in a correctional institution. *Id. State v. Wilson,* No. 03C01-9209-CR-00305, 1993 WL 79626 (Tenn. Crim. App. 1993) ("It is questionable whether the defendant's needs could best be served in the community when the evidence offered at the sentencing hearing indicated that the defendant needed to be strictly supervised to keep him away from young children.").

Although the trial court did not specifically address community corrections, the trial court expressed concern about the State's psychological report indicating Defendant was capable of being a repeat offender. Based upon the entire record, the trial court concluded that confinement was the proper decision. The expert evidence of both the State and Defendant recommend a strict sex-offender treatment program for Defendant. This can be accomplished on an out-patient basis, but both experts stress that Defendant requires strict and intensive supervision. If strict supervision is not conducted the chances for repeating the offense are great. Also, both experts agree that Defendant should never be left alone with minor children because of the opportunity of repeating.

In conclusion, we find Defendant has failed to establish the special needs requirements of Tennessee Code Annotated § 40-36-106(c) for community corrections sentencing. There is no merit to this issue.

The judgment of the trial court is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE