IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2001

**STATE OF TENNESSEE v. SHARON RHEA**

**Direct Appeal from the Circuit Court for Blount County**
**No. C12730 & 12767     D. Kelly Thomas, Jr., Judge**

---

**No. E2000-02617-CCA-R3-CD**
**September 10, 2001**

---

The Defendant pled guilty to two counts of introduction of drugs into a penal institution.  Her plea agreement required her to serve two concurrent six-year sentences for the offenses, but left the manner of service to the discretion of the trial court.  Following a sentencing hearing, the trial court ordered the Defendant to serve her sentences in the Tennessee Department of Correction.  The Defendant appeals this decision, arguing that the trial court erred by not ordering an alternative sentence.  Because we conclude that the record in this case supports the denial of alternative sentencing, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Julie A. Rice (on appeal), Knoxville, Tennessee; and Mack Garner, Assistant District Public Defender (at trial), Maryville, Tennessee, for the Appellant, Sharon Rhea.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Michael L. Flynn, District Attorney General; and William Reed, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On September 5, 2000, the Defendant, Sharon Rhea, pled guilty to two counts of introduction of drugs into a penal institution.  Pursuant to her plea agreement, the Defendant agreed to two six-year sentences to be served concurrent to one another but consecutive to the sentence she was serving at the time of the offenses in this case.  The plea agreement left the manner of service of the sentence to the discretion of the trial court.  Following a sentencing hearing conducted on October 16, 2000, the trial court ordered that the sentences imposed for the charges in this case be served in the Tennessee Department of Correction.  In this appeal as of right, the Defendant argues that the

trial court erred by denying her alternative sentencing. Having reviewed the record, we affirm the judgment of the trial court.

At her sentencing hearing, the Defendant testified that she was thirty-six years old. She stated that she was married and had three children, ages twenty-one, seventeen and eight years old. She stated that her mother was raising her youngest child. The Defendant testified that she was manic depressive, that she had Hepatitis C, and that she was a recovering alcoholic. She also testified that she was prone to anxiety and panic attacks.

The Defendant testified that at the time of the offenses in this case, she was serving a sentence for armed robbery. She reported that after initially serving two and a half years, she was placed on parole in 1990. However, after being on parole for approximately ten years, she was arrested for driving under the influence (DUI). Based upon her parole violation, she was again incarcerated in March 2000. She stated that her sentence for armed robbery was to expire in 2002.

With regard to the offenses in this case, the Defendant candidly admitted that she possessed both Klonopin and Valium while incarcerated. She explained that she had been prescribed these medications while on parole and had been taking them for approximately three years when she became incarcerated. She stated that the medications were prescribed for manic depressive and suicidal tendencies. In addition, the Defendant informed the court that while she was on parole, she was also taking sleeping medication, Trazodone, and Zoloft, an anxiety medication. She stated that she had been taking these medications since approximately 1990.

The Defendant stated that when she became incarcerated, she was allowed to continue to take her prescription medication for only a couple of weeks before the doctor at the prison where she was incarcerated told her that she no longer needed the medications and took her off of them. The Defendant maintained that this caused her to have "a lot of panic and anxiety attacks" and to become "real nervous and anxious." She stated that she therefore asked two fellow inmates, who were leaving the prison daily for work release, to smuggle the medications into jail. She admitted that she knew she was not supposed to have the medications.

The Defendant reported that if she were to be released from prison, she would live with her husband next door to her parents. She testified that her husband was employed by her parents, who owned a plumbing business, and she stated that if released, she planned to also work for her parents. The Defendant also reported that she was receiving disability payments for her psychological disorders. She maintained that if she were to be released, she would attend an inpatient treatment program for thirty days and then attend Alcoholics Anonymous meetings on a regular basis. She stated, "I would just like to be home with my children and have a chance to get my life straight."

On cross-examination, the Defendant admitted that prison officials discovered the smuggled medications when she "overdosed." She stated that she had ninety-six Klonopins in her possession; however, she explained that when she was on parole, she had been taking four Klonopins a day. The Defendant further admitted that she had had problems with drugs and alcohol since her early teens.

She testified that when she was young, she took "mostly speed and just stuff like that," but "then . . . started taking Valiums" and "nerve medication" prescribed for her at "an early age." She admitted that she had been addicted to Valium and reported that she had recently been through two drug and alcohol programs, which lasted approximately four days each. The Defendant also reported that she received inpatient treatment in 1999 for seven days and in 1994 for twenty-eight days. She explained, "I've had a real serious problem and I do good for about 90 days and then mess up."

The Defendant testified that she had received three convictions for armed robbery, for which she was incarcerated at the time of the offenses in this case. The Defendant further admitted that she was arrested several times for DUI while on parole. The Defendant admitted that in addition to her DUI convictions, she had received two public intoxication convictions, an assault conviction, a conviction for leaving the scene of an accident, and a conviction for driving on a suspended license.

Carolyn Payne, the Defendant's mother, testified on her daughter's behalf. She reported that she kept in close contact with the Defendant and wished to help her as much as possible. She further testified that she had had custody of the Defendant's nine-year-old daughter for approximately a year, and she reported that she had adopted the Defendant's oldest child. She stated that she had taken care of each of the Defendant's children since birth. Payne maintained that even if her daughter were to be released from prison, she intended to continue raising the Defendant's children.

Payne testified that the Defendant had "always had a problem" with drugs and depression. She reported that the Defendant had a prescription for Klonopin at the time she became incarcerated. She stated that the Defendant "started out when she was sixteen with drugs." She reported that the Defendant had tried to commit suicide "many" times by overdosing on her prescription medication. She stated that the Defendant also suffered from manic depression, a bipolar disorder, with which she had been diagnosed for a few years. Payne testified that when the Defendant becomes depressed, she "sit[s] for days and don't talk, don't call nobody. She's quiet." She stated, "I don't think she bothers anybody . . . ." She testified that the Defendant "definitely needs help."

Payne stated that if the Defendant were to be released, the Defendant could work in the family plumbing business. She explained that the Defendant had previously done so, "cutting pipe and soldering." Payne also testified that she and her husband had built a house next door to their own home for the Defendant so that they "could keep an eye on [the Defendant]" because of the Defendant's seizures. Payne stated that the Defendant could move back into the house upon her release.

Payne also maintained that if the Defendant were to be released, she could help the Defendant comply with the conditions of her probation. She stated that she would help ensure that the Defendant took her medicine properly and visited the doctor regularly. Payne testified that she believed the Defendant would be able to comply with the conditions of probation, stating "I think she's had enough."

The Defendant now contends that the trial court erred by ordering her to serve her sentences in the Tennessee Department of Correction. She argues that the trial court failed to "adequately consider[] and weigh[] the circumstances surrounding these offenses as mitigating against incarceration." She also argues that the trial court "placed undue emphasis on her prior opportunities at treatment in denigrating her potential for rehabilitation." She requests that this Court "modify her sentence to split confinement followed by release to an in-patient drug program followed by residence in a halfway house coupled with intensive probation."

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). Because the trial court in this case made an affirmative showing on the record that it considered all relevant facts, circumstances, and sentencing principles in sentencing the Defendant, our review of the Defendant's sentences is de novo with a presumption of correctness.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). The sentence imposed must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The

defendant bears the burden of showing the impropriety of the sentence imposed. <u>Ashby</u>, 823 S.W.2d at 169.

The Defendant argues that she should have been granted a form of alternative sentencing. Tennessee Code Annotated § 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." <u>Id.</u> § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation . . . ." <u>State v. Byrd</u>, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); <u>see also</u> Tenn. Code Ann. § 40-35-303(a). The Defendant, as a Range I standard offender convicted of two Class C felonies, <u>see id.</u> § 39-16-201(b), is presumed to be a favorable candidate for alternative sentencing.

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. <u>See</u> <u>State v. Taylor</u>, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing <u>State v. Moss</u>, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated § 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." <u>Id.</u> § 40-35-103(5); <u>State v. Dowdy</u>, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

The Defendant argues specifically that as part of her alternative sentence, the trial court should have granted her probation. "Although probation 'must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as

a matter of law.'" State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997) (citing Tenn. Code Ann. § 40-35-303(b) sentencing comm'n cmts). In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169.

Although the trial court denied alternative sentencing, it considered as mitigation the Defendant's "emotional situation, [and] mental health problems." However, the trial court also considered the Defendant's "lengthy history of criminal convictions and behavior" and that the Defendant had "violated the conditions of sentences involving release into the community on many occasions." With regard to the likelihood of rehabilitation, the court made the following comments:

> I've reviewed [the Defendant's] testimony, [her] mother's testimony and the presentence report. I think [the] likelihood of rehabilitation is not good. There has been treatment before. And I think confinement in this case is necessary to protect the public from [the Defendant]. Not from [her] willfully dangerous acts, although [she does] have a history of armed robbery, which is very dangerous, but that was years ago. But driving under the influence is just as dangerous. And [the Defendant has] been convicted of that offense one, two, three, four, five times since [she was] paroled in 1990. And leaving the scene of an accident and some public intoxications.

The court also noted that "it's a very serious offense to have someone bring controlled substances into a jail."

Based upon these considerations, the trial court ordered the Defendant to serve her concurrent six-year sentences in the Tennessee Department of Correction. However, the court recommended that she be placed in the Special Needs Unit because of her "mental health history and . . . substance abuse." The trial court concluded, "I do feel that treatment is necessary, but I don't think that treatment in the community is indicated or safe for [the Defendant] or the community."

We conclude that the record in this case supports the trial court's denial of alternative sentencing. The Defendant does have a long record of criminal conduct. See Tenn. Code. Ann. § 40-35-103(1)(A). We also note that the Defendant, by her own admission, violated her parole for armed robbery several times by driving while intoxicated, for which she received a total of five convictions while on parole, and we note that her parole was ultimately revoked based upon a DUI conviction. Additionally, the Defendant was convicted of other criminal offenses while on parole. Parole is a "measure less restrictive than confinement," and it was applied unsuccessfully to the Defendant. See id. § 40-35-103(1)(C). The Defendant has demonstrated an inability to comply with conditions for release into the community. Finally, we recognize the trial court's concern that confinement in this case is "necessary to avoid depreciating the seriousness of the offense[s]." Id. § 40-35-103(1)(B).

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE