# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 3, 2004 Session

## STATE OF TENNESSEE v. FRANKLIN DARNELL BROWN, JR.

**Appeal from the Circuit Court for Carroll County**
**No. 02CR-1945     C. Creed McGinley, Judge**

---

### No. W2003-01863-CCA-R3-CD  - Filed September 16, 2004

---

The defendant, Franklin Darnell Brown, Jr., was convicted of manufacturing methamphetamine and possession of drug paraphernalia.  The trial court ordered concurrent sentences of six years and eleven months, twenty-nine days, respectively.  In this appeal of right, the defendant  contends that the evidence was insufficient to support his conviction for manufacturing methamphetamine and that the sentence was excessive.  The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE,JJ., joined. THOMAS T. WOODALL, J., filed a separate opinion, concurring in part and dissenting in part.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Franklin Darnell Brown, Jr.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

During the early morning hours of June 10, 2002, McKenzie Police Department Officer Mark Anderson, a member of the Twenty-Fourth Judicial District Drug Task Force, received a tip from a confidential source that the defendant was manufacturing methamphetamine.  After obtaining a search warrant, he and other officers executed a search of the defendant's residence, including a shed and a log cabin that were located on the property.  Officers found a .22 caliber pistol, a plastic bag containing ephedrine tablets, coffee filters, plastic tubing, rubber gloves, and pliers in the defendant's sleeping quarters.  In the shed behind the house, officers found a white box that had been used as a container for ether or anhydrous ammonia, salt, glass containers, funnels, spoons, paper towels, cotton balls, coffee filters, and Rooto, a product mixed with salt to "gas" methamphetamine.  There were also small containers with white residue believed to have been used for crushing pills and a glass jar of nearly finished methamphetamine.  In the log cabin, there was a twenty-pound propane

tank that had been used to store anhydrous ammonia. DEA officials destroyed the tank prior to trial due to the danger of explosion.

At trial, Officer Anderson testified that the glass jar of partially manufactured methamphetamine found in the shed was under a fluorescent light. He stated that the drug, which generally took approximately two hours to manufacture, was at a stage "close to final." The officer estimated the finished product required only "fifteen to thirty minutes . . . gas time and drying time." During cross-examination, Officer Anderson approximated that the jar would have yielded twenty-eight to thirty-five grams of methamphetamine with a street value of between $2,800 and $3,500.

The defendant, testifying on his own behalf, contended that many of the items seized by the officers searching his residence were personal items which were unrelated to methamphetamine manufacturing. He maintained that he used the tools and tubing for working on his all-terrain vehicles and he asserted that the coffee filters were for a coffee pot located in his room. The defendant contended that the jar of unfinished methamphetamine contained "nothing but camp fuel, maybe a few crushed up pills." He explained that he was making the drug, which he had previously used only because "[a] couple of friends let [him] try it," to medicate his tension disorder and chronic asthma. The defendant insisted that he had learned how to make methamphetamine on the internet and that he had not made any finished product "in this operation." While acknowledging that someone had assisted him in setting up his equipment, he denied ever having sold methamphetamine.

In addition to manufacturing methamphetamine and possession of drug paraphernalia, the defendant was indicted for possession of hydrocodone with intent to deliver. That charge, however, was dismissed by the state prior to trial.

I

Initially, the defendant contends that the evidence was insufficient to support his conviction for manufacturing methamphetamine, arguing that because no finished product was recovered by police, the evidence would have supported a conviction for attempted manufacture at best. He also argues that the state failed to prove that he was not manufacturing the drug for personal use.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the

presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Tennessee Code Annotated section 39-17-417, which provides in pertinent part as follows, defines the crime of manufacture of a controlled substance:

> (a) It is an offense for a defendant to knowingly:
> (1) Manufacture a controlled substance[.]

Tenn. Code Ann. § 39-17-417(a)(1). Under our Code, methamphetamine is a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(d)(1). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-106(a)(20). "Manufacture" is defined by the Code as follows:

> "Manufacture" means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that "manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use or the preparation, compounding, packaging, or labeling of a controlled substance by:
> (A) A practitioner as an incident to administering or dispensing a controlled substance in the course of professional practice;  or
> (B) A practitioner, or an authorized agent under the practitioner's supervision, for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale;

Tenn. Code Ann. § 39-17-402(14).

In our view, the evidence was sufficient to support the conviction for manufacturing methamphetamine. As used in our Code, "manufacture" includes any preparation or processing of a controlled substance. Here, the defendant was caught in the act of manufacturing methamphetamine, the finished product being approximately one-half hour from completion. That his efforts were interrupted by police does not change their nature. In spite of his contention that the items seized by police were for personal or household use, the defendant admitted at trial that he was manufacturing methamphetamine. The unfinished product discovered by the officers would have yielded as much as thirty-five grams, with a street value of as much as $3,500. A substantial quantity of equipment was seized from the defendant's residence and the defendant admitted that at least one other person was involved in his endeavors. Although the defendant claimed that the drug was for

his personal use, the jury, as the judge of the facts, was free to conclude otherwise. <u>See</u> Tenn. Const. art. I, § 19; <u>Byrge</u>, 575 S.W.2d at 295.

II

Next, the defendant challenges the trial court's sentencing determinations. Initially, the defense cites the following issues: (1) Whether the trial court erred by failing to consider the relevant sentencing criteria for the record; (2) whether the sentence was excessive; (3) whether the trial court erred by denying probation; (4) and whether the trial court erred by denying a community corrections sentence. The brief fails to include, however, any argument or references to the record with regard to the third and fourth issues. In the absence of anything more than bare allegations, this court must treat those issues as waived. <u>See</u> Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by the court."); <u>Jackie William Crowe v. State</u>, No. E1998-00016-CCA-R3-PC, slip op. at 6 (Tenn. Crim. App., at Knoxville, June 20, 2000).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991); <u>see</u> <u>State v. Jones</u>, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." <u>State v. Shelton</u>, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; <u>State v. Smith</u>, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence should then be reduced within the range by any weight assigned to the mitigating factors present. <u>Id.</u>

No testimony was presented at the sentencing hearing. Based on the presentence report, the trial court applied two enhancement factors: (2) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and (14) the defendant committed a felony while on bail or probation from a prior felony. See Tenn. Code Ann. § 40-35-114(2), (14). While not specified as an enhancement factor, the trial court considered that the defendant, who "was unable to verify [his] employment history," had shown a lack of candor with regard to his history of involvement with methamphetamine, which included two prior convictions for manufacturing the drug. That would have been a proper basis for the denial of probation. No mitigating factors were found. The trial court ordered a sentence of six years' incarceration for the conviction for manufacturing methamphetamine and a concurrent sentence of eleven months, twenty-nine days for the conviction for possession of drug paraphernalia. In doing so, the trial court stated as follows:

> [The defendant was] given three years on the first [manufacturing methamphetamine conviction], 1991, to serve six months, and a fine of two thousand dollars ($2,000). Also, there was drug paraphernalia with that, the same as with this, and then you've got another instance. Actually, . . . the others are all part of a scheme, also, the anhydrous ammonia that you use in the manufacture, . . . as well as the drug paraphernalia. That was a three-year sentence, suspended after two hundred and forty days. So they're going up, trying to give him an opportunity. He has not availed himself of that.
>
> *          *          *
>
> [T]he [c]ourt finds [the defendant is] not an appropriate candidate, based upon his earlier failures to abide by the conditions of probations and the prior felony record.

Although the trial court's comments at sentencing were brief, they are sufficient for our review. The defendant was convicted of a Class C felony. A Range I sentence for a Class C felony is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). The defendant does not challenge the applicability of the enhancement factors applied by the trial court or contend that the trial court erred by failing to apply any particular mitigating factors. The presentence report reflects that the defendant had prior convictions for manufacturing methamphetamine, possession of drug paraphernalia, and possession of anhydrous ammonia in 2002 and for manufacturing methamphetamine and possession of drug paraphernalia in 2001.

The United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), however, calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. Id. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537 (emphasis in original). Finally, the Court concluded that

"every defendant has a <u>right</u> to insist that the prosecutor prove to a jury all facts legally essential to the punishment." <u>Id.</u> at 2543 (emphasis in original).

While enhancement factor (14) is related to one of the defendant's prior convictions, its application appears to be barred by the decisions in <u>Blakely</u> and <u>Apprendi</u>. The application of enhancement factor (2), however, would not violate the rule established in <u>Apprendi</u> because that factor is based upon prior criminal convictions. <u>See</u> <u>State v. Patricia Sudberry Butler</u>, No. M2003-01822-CCA-R3-CD (Tenn. Crim. App., at Nashville, Aug. 2, 2004). The trial court concluded that the factor is entitled to great weight. Because of the nature, gravity, and extent of his prior criminal record, the defendant is not entitled to a reduction in sentence. That the defendant was previously convicted of the same or similar crimes within two years of the offenses at issue weighs heavily toward the maximum possible sentence.

Finally, the defendant asserts that the $100,000 fine for manufacturing methamphetamine recommended by the jury and imposed by the trial court was error. Specifically, he contends that "[t]here was no evidence in the record to support the jury verdict assessing the fine." No further argument is included in the defense brief.

Our constitution prohibits fines over $50 unless approved by the jury. Tenn. Const. art. VI, § 14. A fine imposed by the trial court may not exceed that fixed by the jury. <u>State v. Mahoney</u>, 874 S.W.2d 627, 630 (Tenn. Crim. App. 1993). There are no exceptions to these guidelines unless the defendant waives the constitutional protections or his right to a trial by jury. <u>State v. Martin</u>, 940 S.W.2d 567 (Tenn. 1997); <u>State v. Durso</u>, 645 S.W.2d 753, 754 (Tenn. 1983). This court has jurisdiction to review a fine because it is part of the sentence. <u>See</u> <u>State v. Bryant</u>, 805 S.W.2d 762, 763 (Tenn. 1991). Our review is de novo with a presumption that the determinations made by the trial court are correct. <u>State v. Byrd</u>, 861 S.W.2d 377 (Tenn. Crim. App. 1993).

Here, the jury imposed a $100,000 fine, which was within the permissible range for a Class C felony conviction for manufacture of a Schedule II controlled substance. <u>See</u> Tenn. Code Ann. § 39-17-417(c)(2). It is, of course, well settled that the power to declare the appropriate punishment for a crime falls within the authority of the legislature. <u>Woods v. State</u>, 130 Tenn. 100, 169 S.W. 558 (1914). The imposition of a fine, within the limits set by the jury, is to be based on the factors provided by the 1989 Sentencing Act; the trial court must consider the defendant's ability to pay the fine, the evidence from the trial, the sentencing hearing proof in regard to the defendant's ability to pay, and other factors of judgment involved in the setting of the total sentence. <u>Bryant</u>, 805 S.W.2d at 766; <u>see</u> Tenn. Code Ann. § 40-35-207(7); <u>see also</u> <u>State v. Marshall</u>, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (stating that a defendant's ability to pay "is not necessarily a controlling [factor]"); <u>State v. Michael Westley Portzer</u>, No. 01C01-9208-CC-00252 (Tenn. Crim. App., at Nashville, Aug. 12, 1993).

In this case, the trial court did not establish a record to indicate that it considered the applicable factors in approving the fine. Tennessee Code Annotated § 40-35-301(b) provides that "when imposing sentence . . . the court shall impose a fine, if any, not to exceed the fine imposed

by the jury." The trial court is "obligated to evaluate the fine . . . [and] may not simply impose the fine as fixed by the jury." State v. Michael Wilson, No. 01C01-9602-CC-00073 (Tenn. Crim. App., at Nashville, July 31, 1997). Thus, this court is not bound by the presumption of correctness on appeal. State v. Donald Eric Williams, No. 01C01-9405-CR-00165 (Tenn. Crim. App., at Nashville, Dec. 22, 1994).

Nevertheless, the record does not establish why the fine is excessive. Because the defendant has the burden to provide an adequate record on the issue for a proper review, see Tenn. R. App. P. 24(b), the $100,000 fine as recommended by the jury and accepted by the trial judge is not patently excessive, see State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). The seriousness of the felony offense and the defendant's persistence in the manufacture of the illegal drug support the punitive nature of the level of the fine assessed.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE