IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 17, 2005 Session

## STATE OF TENNESSEE v. JAMES T. BRACKINS

**Appeal from the Circuit Court for Sevier County
No. CR9578-II   Richard R. Vance, Judge**

_____

**No. E2004-01871-CCA-R3-CD - Filed July 20, 2005**

_____

The appellant, James T. Brackins, pled guilty to robbery. As part of the plea agreement, the appellant received a six (6) year sentence. After a sentencing hearing, the trial court ordered the appellant to serve the sentence in incarceration. On appeal, the appellant argues that the trial court erred in denying alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

G. Kenneth Gilleland, Sevierville, Tennessee, for the appellant, James T. Brackins.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; Steven R. Hawkins, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In September of 2003, the Sevier County Grand Jury indicted the appellant for aggravated robbery and public intoxication. On March 31, 2004, the appellant pled guilty to an amended charge of robbery; the State dismissed the public intoxication charge. As part of the plea agreement, the appellant received a six (6) year sentence, with the agreement that the trial court would determine the "manner and method" of service of the sentence at a subsequent sentencing hearing.

At the guilty plea hearing, the State presented the facts underlying the guilty plea as follows:

Joseph Denokis, . . . would testify that he was a clerk back on May 7, 2003 at the Family Mart Market on Highway 66, at about 1:17 in the morning this Defendant came in, told him that he had a bomb, and asked for his money. Then he said he had a gun and indicated as if he had a gun, though no gun was seen. The clerk gave him some money, based on the threat and his fear.

This Defendant got in a vehicle and then fled. Sevierville Police Department were notified immediately. And Officer Neal Seals would testify that he got the call to a robbery in progress. As he drove in, this vehicle, Cavalier, was driving away. And as he pulled in, the clerk was running out saying, "There they go."

Well Officer Seals got in behind the vehicle in which this Defendant was a passenger. The co-defendant, who is going to plead guilty today, too, Ms. Arwood, Your Honor, was the driver. The lights were turned off. Of course, this was one-something in the morning. It was being driven recklessly.

Finally, the vehicle turned into a residence and stopped. He got this Defendant out and found $15 in his front pants leg. He was taken back to the market for a show-up, which this - the clerk identified this Defendant as being the robber. And when they took him to jail, they found $110 in his crotch area. And he was intoxicated.

The trial court accepted the appellant's plea and set a sentencing hearing for July 27, 2004, to determine the manner of service of the sentence. At the sentencing hearing, the appellant testified that he was twenty-four (24) years old. The appellant claimed that he did not remember anything that occurred the evening that he was arrested for robbery. However, later in his testimony, the appellant admitted that he remembered calling the co-defendant, then buying a quart of moonshine and some Xanax, but that he did not remember the rest of the events of the evening. The appellant stated that, at the time of the robbery, he was strung out on drugs and "extremely" intoxicated.

The appellant admitted that he had other convictions on his record and that his drug abuse began about eight (8) years prior to his arrest for robbery. The appellant explained to the court that after he was arrested for the robbery, he participated in intensive inpatient treatment at Buffalo Valley Treatment Center as a condition of his bond. While at the treatment facility, the appellant addressed his drug and alcohol issues. The appellant stated that he successfully completed the program. The appellant also expressed remorse for his actions.

The appellant's mother, Deborah Cardwell, testified that she was not aware of the appellant's drug problems. After he completed the inpatient treatment at Buffalo Valley, the appellant moved in with her and her husband. Since that time, the appellant worked for Ms. Cardwell in their family insulation business. Ms. Cardwell described the appellant as a reliable and hardworking employee.

James Kriplean, the probation officer that prepared the presentence report testified that he interviewed the appellant at the Sevier County Jail in April of 2004. At that time, the appellant claimed that he did not remember the night of the robbery. However, when asked about the co-defendant, the appellant told Mr. Kriplean that the two (2) "were going to split the money."

The presentence report indicated that the appellant was arrested three (3) times as a juvenile for possession of a weapon. In addition, the appellant had convictions for possession of marijuana, theft, leaving the scene of an accident, passing worthless checks and a DUI that was reduced to reckless driving. The appellant's record also indicated that there was an outstanding warrant on a probation violation in Grainger County. However, neither the appellant's attorney nor the attorney for the State was able to verify the existence of the warrant. As a result, the trial court did not consider the warrant in sentencing the appellant.

At the conclusion of the hearing, the trial court ordered the appellant to serve the six (6) year sentence in incarceration. After the sentencing hearing, the appellant filed a timely notice of appeal.

Analysis

On appeal, the appellant challenges the trial court's failure to award alternative sentencing. Specifically, the appellant argues that "the record in this case fails to demonstrate that the trial court considered the sentencing principles and all of the relevant facts and circumstances." The State contends that the sentence of confinement was justified.

"When reviewing sentencing issues . . ., the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In regards to alternative sentencing Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and

evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less is an offender for whom incarceration would result in successful rehabilitation . . . ." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a). The appellant herein pled guilty to robbery, a class C felony. See Tenn. Code Ann. 39-13-401. Thus, the appellant was presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Further, as a Range I, Standard Offender convicted of and sentenced to less than eight (8) years for the offense, the appellant was eligible for probation. See Tenn. Code Ann. §§ 40-35-102(6) & -303(a); Byrd, 861 S.W.2d at 379-80. However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if :

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06.

In the case herein, the trial court learned that the appellant was strung out on drugs and "extremely" intoxicated at the time he robbed a market with another individual and threatened to shoot and kill the clerk. The facts also indicated that the appellant and his cohort took a two-year-old

child in the car with them to the robbery and sped away from the scene in the middle of the night without using headlights. The trial court heard testimony from the appellant in which he expressed remorse for his actions and admitted that, prior to entering inpatient treatment for substance abuse, he had a serious problem with both drugs and alcohol. The presentence report indicated that the appellant had several prior convictions including theft, reckless driving, and possession of marijuana.

After listening to the evidence, the trial court commented:

All too often we see lives that are wrecked by the abuse of drugs, the abuse of alcohol. It is not the drugs. It is not the alcohol. It's the person who abuses those substances that causes much problems in society, regardless of what this Court does, as far as [the appellant] is concerned.

His major problem in life is to successfully avoid further abuse of drugs and alcohol and it definitely is to his credit that he has taken these steps, since he made bond, to try to get off of those substances.

In this case his criminal behavior, first of all, caused a clerk, who's put down on the floor with a threat that he had a gun and would shoot, to experience a feeling that no one should have to go through. His conduct in enlisting the aide of his girlfriend to drive the getaway car risked her two year old child. It was all a part of his criminal purpose in robbing the store to get money to buy more drugs.

Yes, we see too much of this. The vast majority of cases involving robberies, aggravated robberies, burglaries, you look underneath and there is someone who is abusing drugs, abusing alcohol.

In this case the sentence is already agreed upon. It was a six year, Range I sentence. The enhancing and mitigating factors don't apply as such because those are used to determine what the appropriate sentence is.

The principle issue with respect to probation or split confinement or alternative sentencing are the same that you would consider for probation, such as his role in the crime, his previous record, and he does have a criminal record and that criminal record of behavior includes not only the offenses to which he pled guilty, a DUI that was reduced to reckless driving and a theft.

Excuse me, there was a check, a bad check case, juvenile offenses but his extensive use of Cocaine and other drugs, Oxycontin, those are all criminal behaviors. That's all part of his criminal activity that led up to this particular event.

But considering his previous criminal history, considering the seriousness of this offense, the consequences to others, the Court feels that confinement is necessary to avoid depreciating the seriousness of this offense. And the Court would order that the sentence be executed in the Department of Corrections as the appropriate sentence in this case of a robbery.

The clerk didn't know whether there was a gun or not. We don't know whether there was a gun or not. If he had one he threw it out the window. All we know is, he says he can't remember anything and the police found no gun. So it may very well be but that clerk didn't know. That clerk didn't know whether there was a gun pointed at the back of his head or a gun in his pocket or what. All the clerk knows is that he said he had a gun and he's [going to] shoot him and put him on the floor, terrifying.

. . . .

But so long as he continues to try to better himself, he would certainly be considered at the earliest time for release. Everything will be . . Everything that happens will be the result of [the appellant's] decisions and conduct, just as it is today. The reason we're here today having this sentence is the result, the consequences of your conduct.

The State obviously took into consideration the things that Mr. Gilleland has discussed in agreeing to a reduced offense of robbery instead of aggravated robbery. A jury could have convicted of aggravated robbery and it would have stood based upon his statements to the clerk that he had a gun. Whether they would or not, I don't know. But that factor was taken into consideration in reduction of the greater offense.

So for all those reasons the Court must order that the sentence be executed. Those people that are hurt the most by your conduct is your mother, Ms. Arwood was hurt, the clerk was hurt. And I say hurt, that is in terms of consequences, bad consequences to them.

As stated previously, we review sentencing issues with the presumption that the determinations made by the trial court are correct so long as the trial court followed sentencing procedures. Tenn. Code Ann. § 40-35-401(d). The trial court herein primarily denied alternative sentencing in order to avoid depreciating the seriousness of the offense. This factor is an appropriate consideration for providing a proper basis for the denial of alternative sentencing. See Tenn. Code Ann. § 40-35-103(1)(B). The appellant took a two-year-old to the scene of a robbery when he was, by his own admission, "extremely" intoxicated. We agree with the trial court that the appellant's actions require confinement in order to avoid depreciating the seriousness of the offense. Further, although not mentioned by the trial court, the record indicates that measures less restrictive than confinement have been applied to the appellant in the past and failed. The presentence report

indicates that the appellant was placed on probation at least twice.  This is also an appropriate basis for the denial of alternative sentencing.  We determine that the trial court herein considered the sentencing principles as well as the facts and circumstances of the case and properly denied the appellant alternative sentencing.  This issue is without merit.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE